**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW PERRONG, | Case No. 1:20-cv-01506 |
| Plaintiff, | **FIRST AMENDED** |
| | **CLASS ACTION COMPLAINT** |
| v. | |
| | **JURY DEMANDED** |
| THE ALLSTATE CORPORATION | |
| and DOES 1-20, | Honorable Judge Harry D. Leinenweber |
| Defendants. | |

Now comes the Plaintiff, ANDREW PERRONG ("Plaintiff"), by and through his attorneys, and for his First Amended Complaint against the Defendants, THE ALLSTATE CORPORATION ("Allstate") and DOES 1-20, Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENTS**

1.     This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, resulting from the illegal actions of Allstate, in negligently, knowingly, and/or willfully placing, through its agent(s), sales, solicitation, and/or other telemarketing calls to Plaintiff's telephone, in violation of the TCPA and related regulations, specifically the National Do-Not-Call and internal do-no-call provisions of 47 C.F.R. 64.1200(c), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.     According to the Federal Communications Commission's website, accessed on May 7, 2021 at https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts:

> The national Do Not Call list protects landline and wireless phone numbers. You can register your numbers on the national Do Not Call list at no cost… Telemarketers must remove your numbers from their call lists and stop calling you within 31 days from the date you register. Your numbers will remain on the list until you remove them or discontinue service – there is no need to re-register numbers.

3. The TCPA was designed to prevent telephone calls like the ones described herein, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 744 (2012).

4. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on the TCPA's purpose).

5. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13.

6. Persons, like Plaintiff herein, have no control to stop unsolicited telemarketing calls placed to them, whether automated or otherwise.

2

7.      Plaintiff and the members of some of the proposed classes defined below received telemarketing calls placed to their telephones, placed by or on behalf of Defendant Allstate, which were made without the consent of the recipients of said calls.

8.      In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random *or* sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

9.      Defendant's autodialer on its face does not operate in the same fashion as Facebook's system, at issue in *Duguid*. Defendant's system is alleged to effectively use a predictive dialer to call debtors en masse, via campaigns that are programmed using algorithms to sequence the dialing of stored lists.

10.      Sequential or random number generation thus assists in the storage and transmission (i.e. production) of calls in an automated fashion to the dialer via automated campaigns. Such a system is not analogous to Facebook's, which sent one to one text messages to individuals upon a triggering event.

11.      In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id*. at 1171-72 fn. 7.

12.      The term "predictive dialer" never appears in the Supreme Court's ruling in *Duguid*, nor does the order ever suggest that such devices are not an ATDS.

3

13. Predictive dialers, which dial stored lists of numbers using algorithms, have been prohibited since the passage of the TCPA, and have historically been prohibited by the FCC ever since. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1991, Testimony of Robert Bulmash and Steve Hamm, at pgs. 11, 16, 19, 24-25, and 27.

14. In addition, the Congress has found abundant evidence that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers. Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers. There is a need to insure that consumer credit reporting is exercised with respect for the consumer's right to privacy. Congress wrote the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

15. The FCRA is a consumer protection statute which regulates the activities of credit reporting agencies and users of credit reports, and which provides certain rights to consumers affected by use of the information collected about them.

16. Congress designed the FCRA to preserve consumers' right to privacy by safeguarding the confidentiality of the information maintained by the consumer reporting agencies.

4

17.     Under the FCRA, 15 U.S.C. § 1681a(d)(1), the term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in the underwriting of credit transactions involving the consumer.

18.     Congress has chosen to protect consumers' rights to privacy by prohibiting any release of consumer reports unless the release is for one of the permissible purposes listed in 15 U.S.C. § 1681b.

19.     15 U.S.C. § 1681b(f) in turn provides, "A person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section…"

20.     The permissible purposes listed in 1681b usually arise only in connection with transactions initiated by the consumer.  *See* 15 U.S.C. § 1681b(a)(3)(A)-(F).

21.     Plaintiff and the members of one of the proposed classes defined below had their consumer credit reports used and/or obtained by or on behalf of Defendant Allstate, without the existence of a permissible purpose as defined in the FCRA.

**JURISDICTION AND VENUE**

22.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under laws of the United States, the TCPA and the FCRA.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Allstate resides in this District.

## PARTIES

24.    Plaintiff is an individual who was at all relevant times residing in Pennsylvania.

25.    Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

26.    Plaintiff is also a "consumer" as defined by 15 U.S.C. § 1681a(c).

27.    On information and belief, Allstate is a corporation of the State of Delaware, which is registered with the Secretary of State to do business in Illinois, and whose principal place of business is located in Northbrook, Illinois.

28.    On information and belief, at all times relevant hereto, Allstate was engaged in the marketing and sale of insurance policies, insurance coverage, and related products and services.

29.    Allstate is a "person" as defined by 47 U.S.C. § 153(39).

30.    Allstate is also a "person" as defined by 15 U.S.C. § 1681a(b).

31.    The true names and capacities of the Defendants sued herein as DOES 1-20 are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff may seek leave of Court to amend the Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

32.    Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTS COMMON TO ALL COUNTS

33.     On or about November 22, 2017, Plaintiff successfully registered his telephone number ending in -3458 with the National Do-Not-Call Registry.

34.     Plaintiff's telephone number ending in -3458 was assigned by a service for which Plaintiff is charged for each call received at that number.

35.     On or about February 9, 2018, Defendants began placing unsolicited automated telemarketing telephone calls to Plaintiff.

36.     Plaintiff received unsolicited automated telemarketing telephone calls from Defendants on or about February 19, 2018, February 27, 2018, and March 6, 2018.

37.     When Plaintiff answered Defendants' calls, he sometimes heard a computerized noise, followed by a long pause, before a live representative would begin speaking, which is indicative of the use of an automatic telephone dialing system.

38.     When Plaintiff answered Defendants' calls on February 9 and 27, 2018, nobody came on the line. Plaintiff only heard "dead air" before the line disconnected, which is also indicative of the use of an automatic telephone dialing system.

39.     On or about March 6, 2018, Defendants made an inquiry into Plaintiff's creditworthiness by accessing Plaintiff's TransUnion consumer credit report.

40.     Plaintiff never provided consent for Defendants to access Plaintiff's credit report, nor did he have knowledge that Defendants had done so until after the fact.

41.     Defendants placed the telephone calls described above to Plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227(a)(1).

42.     The system used by Defendant qualifies as a predictive dialer as set forth in paragraphs 8-13 above.

43.     On information and belief, the purpose of these telephone calls was the attempted sale of insurance policies, insurance coverage, and/or related products and services.

44.     On information and belief, Defendants routinely use an automatic telephone dialing system in the ordinary course of Defendants' business(es).

45.     Plaintiff did not give Defendants his express consent, invitation, or permission to place the automated, unsolicited telemarketing calls to him using an automatic telephone dialing system or an artificial or prerecorded voice. In the alternative, any prior express consent, invitation, or permission which Plaintiff may have given Defendants to contact him in this manner was terminated and revoked.

46.     Defendants' telephone calls to Plaintiff using an automatic telephone dialing system were not made for emergency purposes.

47.     Defendants' calls were placed to a telephone number assigned to a telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

48.     Defendants' telephone calls to Plaintiff utilizing an automatic telephone dialing system, for non-emergency purposes, and in the absence of Plaintiff's express consent, invitation, or permission, violated 47 U.S.C. § 227(b)(1).

49.     Defendants' telemarketing calls to Plaintiff in the absence of Plaintiff's express consent, invitation, or permission, violated 47 CFR § 64.1200(c).

50.     The FCRA, 15 U.S.C. § 1681b, delineates the only permissible uses of, or access to, consumer reports.

51.     Defendant's inquiry into Plaintiff's consumer report information, without Plaintiff's consent, falls outside the scope of any permissible use or access included in 15 U.S.C. § 1681b.

52. By making an unauthorized consumer report inquiry regarding Plaintiff without his consent, Defendant violated 15 U.S.C. § 1681b, by using Plaintiff's consumer report for an impermissible use that falls outside the scope of 15 U.S.C. § 1681b.

53. Defendant's inquiry into Plaintiff's consumer report information does not qualify as a "firm offer of credit" under the FCRA.

54. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a.  Invasion of privacy;

    b.  Intrusion upon and occupation of the capacity of Plaintiff's telephone line;

    c.  Wasting Plaintiff's time; and

    d.  Aggravation, inconvenience, frustration, emotional distress, and similar categories of damages.

## CLASS ALLEGATIONS

55. Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed classes listed below (hereinafter jointly referred to as the "Classes").

56. The class related to Plaintiff's claim that Defendants contacted him using an automatic telephone dialing system without his consent (hereinafter the "ATDS Class") is defined as follows:

> All persons within the United States who received any telephone calls from Defendants that were placed to said persons' paging services, cellular telephones, specialized mobile radio services, radio common carrier services, or other services for which the called party was charged for the call, which were made through the use of an automatic telephone dialing system or an artificial or prerecorded voice, without the express consent of the persons receiving such calls, within four years prior to the filing of the original Complaint in this Action.

57.    The class related to Plaintiff's claim that Defendants contacted him despite his telephone number having been listed on the National Do-Not-Call List (hereinafter the "DNC Class") is defined as follows:

> All persons within the United States whose telephone numbers were registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendants prior express consent nor had a prior established business relationship with Defendants, who received more than one call made by or on behalf of Defendants that promoted Defendant Allstate's products or services, within any twelve-month period, within four years prior to the filing of the original Complaint in this Action.

58.    The class related to Plaintiff's claim that Defendants accessed his consumer credit report without a permissible purpose (hereinafter the "FCRA Class") is defined as follows:

> All persons within the United States whose consumer credit reports were accessed or reviewed by Defendants without the consumers' consent or without a permissible purpose under 15 U.S.C. § 1681b, within two years prior to the filing of the original Complaint in this Action.

59.    Plaintiff represents, and is a member of, the ATDS Class, consisting of all persons within the United States who received any telephone calls from Defendants that were placed to said persons' paging services, cellular telephones, specialized mobile radio services, radio common carrier services, or other services for which the called party was charged for the call, which were made through the use of an automatic telephone dialing system or an artificial or prerecorded voice, without the express consent of the persons receiving such calls, within four years prior to the filing of the original Complaint in this Action.

60.    Plaintiff represents, and is a member of, the DNC Class, consisting of all persons within the United States whose telephone numbers were registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendants prior express consent nor had a prior established business relationship with Defendants, who received more than one call made by or on

behalf of Defendants that promoted Defendant Allstate's products or services, within any twelve-month period, within four years prior to the filing of the original Complaint in this Action.

61.    Plaintiff represents, and is a member of, the FCRA Class, consisting of all persons within the United States whose consumer credit reports were accessed or reviewed by Defendants without the consumers' consent or without a permissible purpose under 15 U.S.C. § 1681b, within two years prior to the filing of the original Complaint in this Action.

62.    Defendants, their employees and agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Classes' members number in the hundreds, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

63.    The Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of the Classes' members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Classes include hundreds, if not thousands of members. Plaintiff alleges that the Classes' members may be ascertained by the records maintained by Defendants or Defendants' agents.

64.    This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Classes are so numerous that joinder of the Classes' members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

65.    Common questions of fact and law exist as to all members of the ATDS Class which predominate over any questions affecting only individual members of the ATDS Class. These common legal and factual questions, which do not vary between the ATDS Class members, and

which may be determined without reference to the individual circumstances of any ATDS Class members, include, but are not limited to, the following:

a. Whether, within the two years prior to the filing of the original Complaint in this Action, Defendants or their agents placed any calls to Plaintiff and the ATDS Class members using any automatic telephone dialing system or an artificial or prerecorded voice to any paging services, cellular telephones, specialized mobile radio services, radio common carrier services, or other services for which the called party was charged for the call;

b. Whether Plaintiff and the ATDS Class members provided their prior express consent to receive any such calls or whether such consent had been revoked;

c. Whether Plaintiff and the ATDS Class members were damaged thereby, and the extent of damages for such violation; and

d. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

66.    As a person that received numerous calls from Defendants using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiff's express consent, Plaintiff is asserting claims that are typical of the ATDS Class.

67.    Common questions of fact and law exist as to all members of the DNC Class which predominate over any questions affecting only individual members of the DNC Class.  These common legal and factual questions, which do not vary between DNC Class members, and which may be determined without reference to the individual circumstances of any DNC Class members, include, but are not limited to, the following:

12

a.   Whether, within the four years prior to the filing of the original Complaint in this Action, Defendants or their agents placed more than one solicitation call to members of the DNC Class, whose telephone numbers were on the National Do-Not-Call Registry, and who had not granted express consent to Defendants and did not have an established business relationship with Defendants;

b.   Whether Defendants obtained express written consent to place solicitation calls to Plaintiff or the DNC Class members' telephones;

c.   Whether Plaintiff and the DNC Class member were damaged thereby, and the extent of damages for such violation; and

d.   Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

68.   As a person that received multiple solicitation calls from Defendants within a 12-month period to a number registered on the National Do-Not-Call Registry, who had not granted Defendants express consent and did not have an established business relationship with Defendants, Plaintiff is asserting claims that are typical of the DNC Class.

69.   Common questions of fact and law exist as to all members of the FCRA Class which predominate over any questions affecting only individual members of the FCRA Class. These common legal and factual questions, which do not vary between FCRA Class members, and which may be determined without reference to the individual circumstances of any FCRA Class members, include, but are not limited to, the following:

a.   Whether, within the two years prior to the filing of the original Complaint in this Action, Defendants or their agents reviewed or accessed the FCRA

13

Class members' consumer credit reports without the FCRA Class members' consent or without a permissible purpose under the FCRA;

b.   Whether Plaintiff and the FCRA Class member were damaged thereby, and the extent of damages for such violation; and

c.   Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

70.   As a person who had his consumer credit report reviewed or accessed by Defendant or their agents without his consent and without a permissible purpose under the FCRA, Plaintiff is asserting claims that are typical of the FCRA Class.

71.   Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Classes.

72.   Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained attorneys experienced in the prosecution of class actions.

73.   A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all the Classes' members is impracticable. Even if each of the Classes' members could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each of the Classes' members. Class treatment will also permit the adjudication of relatively

14

small claims by many of the Classes' members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

74.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other of the Classes' members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Classes' members to protect their interests.

75.     Defendants have acted or refused to act in respect generally applicable to the Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

76.     Defendants failed to comply with the requirements of the TCPA, including but not limited to 47 U.S.C. § 227(b), and 47 C.F.R. § 64.1200(c), as to the ATDS Class members and the DNC Class members with respect to the above-alleged transactions.

77.     The TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii), provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States…

78.     47 C.F.R. § 64.1200(c)(2) provides that:

> [n]o person or entity shall initiate any telephone solicitation to…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

15

79.     Defendants called the ATDS and DNC Class members without the members' express consent, and/or after the members registered with the federal government's Do-Not-Call list, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. 64.1200(c).

80.     Defendants failed to comply with the requirements of the FCRA, including but not limited to 15 U.S.C. § 1681b, as to the FCRA Class members with respect to the above-alleged transactions.

81.     Defendants reviewed or accessed the FCRA Class members' consumer credit reports without the members' consent and without a permissible purpose, in violation of the FCRA.

82.     The size and definition of the Classes can be identified through Defendants' records and/or Defendants' agents' records.

## COUNT I
## NEGLIGENT VIOLATION OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)(1)

83.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 82 above as if reiterated herein.

84.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*, including 47 U.S.C. § 227(b)(1).

85.     As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

86.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

16

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATION OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)(1)

87.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 82 above as if reiterated herein.

88.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*, including 47 U.S.C. § 227(b)(1).

89.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to including 47 U.S.C. § 227(b)(3).

90.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## COUNT III
## NEGLIGENT VIOLATION OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(c)(5) / 47 CFR § 64.1200(c)

91.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 82 above as if reiterated herein.

92.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*, including the implementing regulations of 47 CFR § 64.1200(c).

93.     As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

94.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### COUNT IV
### KNOWING AND/OR WILLFUL VIOLATION OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(c)(5) / 47 CFR § 64.1200(c)

95.      Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 82 above as if reiterated herein.

96.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*, including the implementing regulations of 47 CFR § 64.1200(c).

97.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to including 47 U.S.C. § 227(c)(5).

98.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### COUNT V
### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

99.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 82 above as if reiterated herein.

100.    The foregoing acts and omissions constitute numerous and multiple negligent violations of the FCRA.

101.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1), and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## COUNT VI
## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

102.    Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 82 above as if reiterated herein.

103.    The foregoing acts and omissions constitute numerous and multiple willful violations of the FCRA.

104.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100 and not more than $1,000, pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2), and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n(a)(3), from Defendants.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.      An order certifying the Classes and appointing Plaintiff as Representative of the Classes;

b.      An order certifying the undersigned counsel as the Classes' Counsel;

c.      An order requiring Defendants, at their own cost, to notify all of the Classes' Members of the unlawful, unfair, deceptive, and unconscionable conduct herein;

    d.       Judgment against Defendants in the amount of $500.00 in statutory damages for each and every negligent violation of the TCPA by Defendants;

    e.       Judgment against Defendants in the amount of $1,500.00 in statutory damages for each and every knowing and/or willful violation of the TCPA by Defendants;

    f.       An award of actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

    g.       An award of statutory damages of $1,000.00 for every willful violation of the FCRA, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    h.       An award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    i.       An order for injunctive relief prohibiting such conduct by Defendants in the future;

    j.       Judgment against Defendants for Plaintiff's court costs and other litigation costs;

    k.       An award of reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

    l.       Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECFULLY SUBMITTED,

ANDREW PERRONG

By:    /s/ David B. Levin
        Attorney for Plaintiff
        Illinois Attorney No. 6212141
        Law Offices of Todd M. Friedman, P.C.
        111 W. Jackson Blvd., Suite 1700
        Chicago, Illinois 60604
        Phone: (224) 218-0882
        Fax: (866) 633-0228
        dlevin@toddflaw.com

Case: 1:20-cv-01506 Document #: 35 Filed: 05/07/21 Page 22 of 22 PageID #:185

**CERTIFICATE OF SERVICE**

I, David B. Levin, attorney for the Plaintiff herein, certify that on May 7, 2021, a copy of the foregoing First Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ David B. Levin
Attorney for Plaintiff